Michael F. Ram, Esq. (SBN 104805)
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Email: mram@forthepeople.com

Patrick A. Barthle II*
Florida Bar No. 99286
pbarthle@ForThePeople.com
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

Ryan D. Maxey*
**MAXEY LAW FIRM, P.A.**
107 N. 11th St. #402
Tampa, Florida 33602
(813) 448-1125
ryan@maxeyfirm.com

*\* pro hac vice*
*Attorneys for Plaintiff and the Proposed Class*

# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY TANNER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAVAN COMMERCIAL FUELING, INC.,<br><br>Defendant. | Case No. 3:24-CV-1341-BTM-JLB<br><br>**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE CLASS**<br><br>Judge:       Hon. Barry Ted Moskowitz<br>Magistrate:  Hon. Jill L. Burkhardt<br><br>Action Filed:   July 30, 2024<br>Trial Date:     None Set |

i

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## <u>INTRODUCTION</u>

Following hard-fought settlement negotiations, the Parties[1] reached a settlement to resolve claims arising from a Ransomware Attack Plavan announced in June 2024. The settlement creates a non-reversionary common fund of $300,000.00 for the benefit of approximately 2,948 class members (or **<u>$101.76</u>** per class member),[2] including (i) reimbursement for Ordinary Out-of-Pocket Losses, (ii) reimbursement for Extraordinary Losses and Attested Time; (ii) Residual Cash Payments of up to $550; and (iv) Credit Monitoring Services. Subject to Court approval, the Settlement Fund will also pay for a notice and administration program, a service award to RP, and attorneys' fees and expenses. Plavan commits to pay for, implement, and continue certain data-security enhancements.

The settlement is a favorable result for the Settlement Class, securing valuable benefits tailored to the facts of the case. The settlement is fair, reasonable, and adequate and meets the requirements of Rule 23(e). RP thus moves for an order preliminarily approving the settlement and directing class notice and scheduling a

---

[1] The parties to the settlement are Tracy Tanner, the Representative Plaintiff ("RP"), on behalf of the proposed Settlement Class, and Defendant Plavan Commercial Fueling, Inc. ("Plavan"). Capitalized terms used in this Brief have the same meaning as in the Settlement Agreement ("S.A."), attached hereto as Exhibit 1.

[2] As explained further below, this figure far exceeds what is typically obtained in data breach cases.

**1**

Final Approval Hearing. In support of her motion, RP submits the Settlement Agreement ("Settlement Agreement") (Ex. 1 hereto), which includes a proposed order preliminarily approving the settlement and directing notice (Ex. D to the Settlement Agreement); the declaration of proposed co-Class Counsel Ryan D. Maxey ("Maxey Decl.") (Ex. 2 hereto); and the declaration of Anne-Marie Marra behalf of the proposed Claims Administrator (Simpluris, Inc. ("Simpluris")), including the Notice Plan ("Marra Decl.") (Ex. 3 hereto).

## **FACTUAL BACKGROUND**

### **A. Overview of the Litigation**

On or around February 23, 2024, Plavan experienced a Ransomware Incident, which may have impacted the names and Social Security numbers of Plavan's current and former customers.  On or around June 24, 2024, Plavan announced the Ransomware Attack. On July 30, 2024, RP filed a Class Action Complaint in this Court (ECF No. 1) (the "Complaint").  Plavan denies the allegations and the claims made in the Complaint.

Prior to Plavan responding to the Complaint, the Parties engaged in settlement negotiations.  After a virtual meeting and several written exchanges, the parties reached an agreement in principle on a $300,000.00 Settlement Fund, the terms of which were later finalized in this Settlement Agreement and the attached exhibits.

**B. The Terms of the Proposed Settlement**

**The Settlement Class**

The proposed Settlement Class is defined as: all individual U.S. residents to whom Plavan sent written notification of the February 23, 2024, Ransomware Incident S.A. ¶ 1.27.[3]   Plavan represents that the Settlement Class contains approximately 2,948 individuals. *Id.*

**The Settlement Fund**

Plavan will pay $300,000.00 into a Settlement Fund for class benefits, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses award by the Court. *Id.* ¶ 2.1.  Specifically, within thirty (30) days of preliminary settlement approval, Plavan will fund a non-reversionary cash settlement fund in the amount of $300,000.00 for the benefit of Settlement Class Members (the "Settlement Fund").  *Id.*  The specific benefits available to Settlement Class Members are detailed in the Settlement Agreement, and include:

---

[3] Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendant; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Ransomware Incident or who pleads nolo contendere to any such charge. Defendant represents that there are no such individuals known within Settlement Class. *Id.*

3

- **Ordinary Out-of-Pocket Losses.** All Settlement Class Members may submit a claim for "Ordinary" Out-of-Pocket Losses up to $1,000 per individual. S.A. ¶ 2.3. "Ordinary" Out-of-Pocket Losses are unreimbursed costs or expenditures incurred by a Class member in responding to notice of the Ransomware Incident that were incurred between February 23, 2024 (or the earliest verifiable date the data breach occurred) and the Claims Deadline, as result of the Ransomware Incident *Id.* ¶ 2.3.1.

- **Extraordinary Losses and Attested Time.** In addition to submitting a claim for Ordinary Out-of-Pocket Losses, Settlement Class Members who believe they have suffered identity theft, fraud, or other extraordinary losses may submit a claim for Extraordinary Out-of-Pocket Losses up to $10,000 per individual. S.A. ¶ 2.4. "Extraordinary Losses" are actual, documented, and unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class member's personal information. *Id.* ¶ 2.4.1. The loss must have occurred between February 23, 2024 (or the earliest verifiable date the data breach occurred) and the Claims Deadline. *Id.* The Settlement Class Member must have made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. *Id.* In addition, and whether or not they incurred Extraordinary Out-of-Pocket Losses, Settlement Class Members may also submit a claim for up to 5 hours of time spent remedying issues related to the Ransomware Incident at a rate of $30 per hour, but only if at least 1 full hour was spent. ("Attested Time"). *Id.* ¶ 2.4.3.

- **Residual Cash Payment.** If there are funds remaining in the Settlement Fund after payment of Approved Claims for Credit Monitoring Services, Approved Claims for Ordinary Out-of-Pocket Losses, Approved Claims for Extraordinary Out-of-Pocket Losses and Attested Time, costs of notice and administration, a service award approved by the Court, and attorney's fees and expenses approved by the Court ("the Remainder"), the Remainder will be paid pro rata to each Settlement Class Member who timely submitted an approved claim, whether for a Residual Cash Payment or any other benefit

4

available under the Settlement. *Id.* ¶ 2.7. The amount of the Residual Cash Payments will be calculated by dividing the Remainder by the number of Settlement Class Members who timely submitted an approved claim, and thus could be less than $550. *Id.*

- **<u>Credit Monitoring/Identity Theft Protection Services</u>**. The Settlement Fund will be used to provide three years of three bureau credit monitoring ("Credit Monitoring Services"). *Id.* ¶ 2.2. Settlement Class Members must file a claim form that selects credit monitoring in order to obtain Credit Monitoring Services. *Id.*

Settlement Class Members seeking any of these benefits must complete and submit either a written or online Claim Form to the Claims Administrator, postmarked or electronically submitted on or before the Claims Deadline. *Id.* ¶ 2.8.2. For Claims for Ordinary Out-of-Pocket Losses and Claims for Extraordinary Losses and Attested Time, the claimant must provide documentation supporting their claim (*id.* ¶¶ 2.3.2, 2.4.2).

If the aggregate amount of approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Losses and Attested Time exceeds the remaining amount of the Settlement Fund after payment for costs of Credit Monitoring Services and Court-approved notice and administration costs, service award payments, and attorneys' fees and expenses, approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Out-of-Pocket Losses and Attested Time will be decreased *pro rata* to consume the remaining amount of the Settlement Fund. *Id.* ¶ 2.6.

Residual Cash Payments will be increased *pro rata* to a maximum of $550 or

**5**

decreased *pro rata* to consume the remaining amount of the Settlement Fund after payment for approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Out-of-Pocket Losses and Attested Time, costs of Credit Monitoring Services, and Court-approved notice and administration costs, service award payments, and attorneys' fees and expenses. *Id.* ¶ 2.7.

### Proposed Injunctive Relief—Business Practice Commitments

At least seven (7) days before any deadline for a motion for preliminary approval of this Settlement, Plavan will provide a declaration detailing the subsequent remedial measures it took following the Ransomware Incident. Plavan agrees that the subsequent remedial measures will continue for at least 3 years following the execution of the Settlement Agreement. *Id.* ¶ 2.9.

### Proposed Notice and Claims Program

Proposed Class Counsel have retained, and request that the Court appoint, Simpluris, Inc. as the Claims Administrator to provide notice to Settlement Class Members and to process claims. The Notice Plan satisfies the "best notice practicable" standard pursuant to Rule 23 of the Federal Rules of Civil Procedure by giving direct summary postcard notice to the 2,948 Settlement Class Members via U.S. mail. Marra Decl. ¶ 12. Moreover, the Long Form Notice will be posted on the Settlement Website, along with other important documents such as the Settlement Agreement, and a toll-free help line will be available to answer

Settlement Class Members' questions. *Id.* ¶ 16. In proposed Class Counsel's experience, and according to Simpluris, the reach of the Notice Plan meets that of other court-approved notice programs, and has been designed to meet due process requirements, including the "desire to actually inform" requirement. *Id.* ¶ 10. The Notice Plan is thus the best notice practicable under the circumstance of this case. *Id.*

The claims process similarly draws upon the most up-to-date techniques to facilitate participation, including the ability to submit claims electronically on the Settlement Website or by mail. Simpluris, the proposed Claims Administrator, is a widely-regarded expert with the experience and capability to handle a case of this magnitude. *See generally* Marra Decl.

**Attorneys' Fees and Expenses and Service Awards**

Proposed Class Counsel may request an award of attorney's fees of up to one third of the Settlement Fund, or $100,000.00, to be paid exclusively from the Settlement Fund. S.A. ¶ 7.2. Plavan reserves its right to contest any such request. *Id.*

Proposed Class Counsel may request an award of costs and expenses up to $10,000.00 to be paid exclusively from the Settlement Fund. *Id.* Plavan reserves its right to contest any such request. *Id.*

Proposed Class Counsel may also request a service award of up to $5,000.00

for RP to be paid exclusively from the Settlement Fund. *Id*. ¶ 7.3. Plavan reserves its right to contest any such request. *Id.*

**Releases**

The Settlement Class will release Plavan from claims that were or could have been asserted in this case. The releases are detailed in the Settlement Agreement. *Id*. ¶¶ 1.22, 1.23, 6.1.

## ARGUMENT

In *In re Solara Med. Supplies Data Breach Litig.*, No. 3:19-CV-02284-H-KSC, 2022 WL 1174102 (S.D. Cal. Apr. 20, 2022), another "cyberattack" case, Judge Huff thoroughly laid out the criteria for approving a class action settlement in the data privacy context before analyzing those criteria and ultimately granting preliminary approval of a class action settlement. RP relies on Judge Huff's Order throughout this motion as it offers guidance particularly useful in the data privacy context, including as follows:

> When "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The district court must first "assess whether a class exists," and second, determine whether the "proposed settlement is fundamentally fair, adequate, and reasonable." *Id.*

*Id.* at *3 (citations omitted).

## A. Whether a Class Exists.

### 1. Class Certification.

"A plaintiff seeking to certify a class under Rule 23(b)(3) must first satisfy the requirements of Rule 23(a)." *Id.* (citing Fed. R. Civ. P. 23(b); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011)). "Once subsection (a) is satisfied, the purported class must the fulfill the requirements of Rule 23(b)(3)." *Id.* (citing Fed. R. Civ. P. 23(b)).

### i. Rule 23(a) Requirement.

### 1. Numerosity.

"The numerosity prerequisite is met if 'the class is so numerous that joinder of all members is impracticable.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(1)). "'In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.'" *Id.* (quoting *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)). The proposed class includes approximately 2,948 individuals. S.A. ¶ 1.27. Joinder of this many class members would be impracticable.

### 2. Commonality.

"The commonality prerequisite is met if there are 'questions of law or fact common to the class.'" *In re Solara*, No. 2022 WL 1174102, at *4 (quoting Fed. R. Civ. P. 23(a)(2)). "'"[T]he key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will

'generate common answers apt to drive the resolution of the litigation.'" *Id.* (quoting *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013)). Common to all class members is whether Plavan's data security adequately protected their personal information and whether Plaintiff and Class Members are entitled to damages, injunctive relief, or other equitable relief and the measure of such. *See generally* Complaint. Commonality is satisfied because this issue is capable of class-wide resolution.[4]

### 3. Typicality.

Typicality requires that 'the claims or defense of the representative parties [be] typical of the claims or defenses of the class.'" *In re Solara*, No. 2022 WL 1174102, at *4 (quoting Fed. R. Civ. P. 23(a)(3)). "A plaintiff's claims are 'typical if they are reasonably co-extensive with those of absent class members.'" *Id.* (quoting *Castillo v. Bank of America, NA*, 980 F.3d 723, 729 (9th Cir. 2020)). "Typicality requires that a representative plaintiff 'possess the same interest and

---

[4] *See Peterson v. Vivendi Ticketing US LLC,* No. CV 23-7498-MWF (DFMX), 2024 WL 3915154, at *7 (C.D. Cal. June 20, 2024) ("That [commonality] requirement is met here, as each Class Member seek resolution of the same legal and factual issues, such as (1) whether Defendant's data security systems prior to and during the Data Security Incident complied with applicable federal and state laws and regulations; (2) whether Defendant was negligent in failing to properly secure and protect Plaintiffs' and the Class's PII; (3) whether Defendant was unjustly enriched by its actions; and (4) whether Plaintiffs and the Class are entitled to damages, injunctive relief, or other equitable relief, and the measure of such damages and relief. (See Consolidated Complaint ¶ 152). The commonality requirement is therefore satisfied.").

suffer the same injury as the class members.'" *Id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)).  RP's claims arise from the same Ransomware Attack that impacted other class members. *See* Complaint ¶¶ 1-17. Typicality is satisfied because resolving RP's claims would also resolve the class members' claims.[5]

### 4.  Adequacy of representation.

"The adequacy of representation prerequisite requires that the class representative be able to 'fairly and adequately protect the interests of the class.'" *In re Solara*, No. 2022 WL 1174102, at *4 (quoting Fed. R. Civ. P. 23(a)(4)). "Representation is adequate if the plaintiff and class counsel (1) do not have any conflicts of interest with any other class members and (2) will prosecute the action vigorously on behalf of the class." *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).  RP's and class members' claims arise from the impact to their PII as a result of the Ransomware Attack. RP actively participated in the case by assisting with the initial and amended complaints and approving the Settlement. Maxey Decl. ¶ 23.  The proposed service award does not misalign his interests with those of other class members. And proposed Class Counsel have capably litigated

---

[5] *See Peterson*, 2024 WL 3915154, at *7 ("Here, Plaintiffs allege that their PII was compromised and that they were impacted by the same allegedly inadequate data security that harmed the rest of the Settlement Class. (Motion at 9). Accordingly, the typicality requirement is satisfied.").

this action thus far. These factors satisfy the adequacy requirement.[6]

### ii. Rule 23(b)(3).

"Rule 23(b)(3) requires a court to find that: (1) 'the questions of law or fact common to class members predominate over any questions affecting only individual members' and (2) 'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *In re Solara*, No. 2022 WL 1174102, at *4 (quoting Fed. R. Civ. P. 23(b)(3)). "These factors are referred to as the 'predominance' and 'superiority' tests." *Id.* (quoting *Hanlon*, 150 F.3d at 1022-23). "Rule 23(b)(3)'s requirements are designed 'to cover cases in which a class action would achieve economies of time, effort, and expenses, and promote...uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997)). "If the parties seek to certify a class for settlement purposes, 'a district court need not inquire whether the case, if tried, would present intractable management problems for the proposal is that there be no

---

[6] *See Peterson*, 2024 WL 3915154, at *8 ("As to the first prong, the Court perceives no obvious conflicts between Plaintiffs and their counsel and the other Class Members. Plaintiffs are not subject to any unique defenses, have experienced the same injuries as the other Class Members, and seek compensation from Defendant. (Motion at 9–10). As to the second prong, as already discussed, Plaintiffs and Class Counsel have vigorously prosecuted this action, Class Counsel have substantial experience litigating similar types of class actions, and there is no reason to believe that Plaintiffs and Class Counsel would not vigorously pursue this action on behalf of the Settlement Class. The adequacy requirement is satisfied.").

trial.'"  *Id.* (quoting *Amchem Prods.*, 521 U.S. at 620).

### 1. Predominance.

"The predominance inquiry tests whether the proposed class is 'sufficiently cohesive to warrant adjudication by representation.'"  *Id.* (quoting *Hanlon*, 150 F.3d at 1022).  "This analysis requires more than proof of common issues of law and fact."  *Id.* (quoting *Hanlon*, 150 F.3d at 1022).  "Rather, the common questions should 'present a significant aspect of the case and...be resolved for all members of the class in a single adjudication.'"  *Id.* (quoting *Hanlon*, 150 F.3d at 1022).  RP alleges that Plavan acted uniformly as to RP and other class members, resulting in the theft of their personal information. *See* Complaint ¶¶ 1-17. This satisfies the predominance requirement.[7]

### 2. Superiority.

"The superiority inquiry requires determination of 'whether objectives of the particular class action procedure will be achieved in the particular case.'"  *In re Solara*, No. 2022 WL 1174102, at *4 (quoting *Hanlon*, 150 F.3d at 1023).  "The

---

[7] *See Peterson*, 2024 WL 3915154, at *8 ("Here, Plaintiffs' claims depend on the common question of whether Defendant used reasonable data security measures to protect consumers' PII. (Motion at 10–11). A common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.  Since the question here can be resolved using the same evidence for all Class Members, a single adjudication is appropriate and thus, the predominance requirement is satisfied.") (citations omitted).

13

class action method is considered to be superior if 'classwide litigation of common issues will reduce litigation costs and promote greater efficiency.'" *Id.* (quoting *Valentino v. Carter-Wallce, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996)). "The class action method has become a common method of adjudicating claims arising out of data breaches." *Id.* (citing *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, *8 (N.D. Cal. July 22, 2020)). It would be impractical for 2,948 individuals to bring separate lawsuits against Plavan with claims arising from the Ransomware Attack. Because a class action is the better method for RP and other class members to vindicate their rights, the superiority requirement is satisfied.[8]

### iii. Appointment of Class Counsel and Class Representative.

"Under Rule 23(g), a court that certifies a class must appoint class counsel."

---

[8] *See Peterson*, 2024 WL 3915154, at *8 ("Under the first factor, individual Class Members do not have a strong interest in prosecuting their individual claims. Each Class Member's damages or financial detriment is relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant. Thus, a class action is a more efficient means for each individual Member to pursue his or her claims. Moreover, because the claims of all putative Class Members are virtually identical, individual suits would require duplicative efforts. With respect to the second factor, there does not appear to be any other litigation currently or previously pending by any Class Member concerning similar claims to those at issue in this action. Finally, as to the third factor, it is desirable to concentrate litigation before this Court. Defendant's principal place of business is in California, which supports litigation in this forum. Considering the presence of Defendant in California and the inclusion of a California sub-class, this Court is a proper forum for resolution of the action.") (citations omitted).

*Id.* (citing Fed. R. Civ. P. 23(g)(1)).  "A court must consider the following factors when appointing class counsel: '(i) the work counsel has done in identifying or investigating potential clams in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsels' knowledge of the applicable law; and (iv) the resources that counsel will commit to represent the class.'"  *Id.* (quoting Fed. R. Civ. P. 23(g)(1)(A)).  "The court may also 'consider any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class.'"  *Id.* (quoting Fed. R. Civ. P. 23(g)(1)(B)).

### a. The work Proposed Class Counsel has done in identifying or investigating potential clams in the action.

Proposed Class Counsel undertook significant investigation of the surrounding facts before negotiating the proposed settlement.  First, prior to filing the complaint, Proposed Class Counsel investigated whether there were any reports that the data at issue was published on the dark web.  Maxey Decl. ¶ 16.  As a result of this investigation, the complaint alleges that "[o]n or around March 7, 2024, reports began surfacing on the Internet that Plavan had been the subject of a ransomware attack by the DoNex ransomware group, that 22 gigabytes of data, including customers' data, were exfiltrated during the Data Breach, and that samples of the leaked data were available on the dark web."  Compl. ¶ 8.

Second, Proposed Class Counsel investigated whether any of the data at issue was actually published on the dark web, including retaining an expert to search the dark web for impacted data. Maxey Decl. ¶ 16. In negotiating the proposed settlement, Proposed Class Counsel leveraged reports that samples of the data had been published and other evidence that the information had been released. *Id.*

Third, Proposed Class Counsel investigated whether Defendant published any representations regarding data security. *Id.* As a result of this investigation, the complaint alleges that "Defendant's Privacy Policy, posted on its website," makes certain representations regarding the protection of personal information. Compl. ¶ 9.

Fourth, Proposed Class Counsel requested and obtained information from Plavan regarding its knowledge of the manner of the attack, its response thereto, the size of the putative class, and what the ransomware attacker did with the data. Maxey Decl. ¶ 16.[9]

"Formal discovery is not necessary where the parties have 'sufficient information to make an informed decision about the settlement.'" *Peterson*, 2024 WL 3915154, at *4 (quoting *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Proposed Class Counsel gathered information reasonably

---

[9] As this information was produced subject to Fed. R. Civ. P. 408 in the interests of negotiation a settlement, Plaintiff cannot provide further detail in this motion.

available before negotiating the proposed settlement, and the information was sufficient to make an informed decision about the settlement.

### b. Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action and their knowledge of the applicable law.

Proposed Class Counsel have extensive experience in data breach and class action litigation. Maxey Decl. ¶¶ 3-13; *see, e.g.*, *Peterson*, 2024 WL 3915154, at *4 ("Class Counsel have substantial experience handling complex litigations and class actions across carious practice areas, including data breach class actions.").

### c. The resources that Proposed Class Counsel will commit to represent the class.

Proposed Class Counsel have already dedicated ample time and resources to the litigation and commit to continuing to do so. *See, e.g.*, *Peterson*, 2024 WL 3915154, at *4 ("Counsel have worked on behalf of the punitive class since the Data Security Incident was first announced, have evaluated the legal and factual disputes and therefore have dedicated ample time and resources to the litigation.").

**B. The Settlement.**

"Rule 23(e) requires the Court to determine whether a proposed settlement is 'fundamentally fair, adequate, and reasonable.'" *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003)). "To make this determination, the Court must consider a number of factors, including: (1) the strength of plaintiff's case; (2) the

risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *Id.* (citing *Staton*, 327 F.3d at 959).

"'In addition, the settlement may not be the product of collusion among the negotiating parties.'" *Id.* (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)). "'Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Id.* (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). "'Signs of collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a 'clear sailing provision'; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund.'" *Id.* (quoting *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, *7 (N.D. Cal. Sept. 4, 2018)).

"Given that some of these factors cannot be fully assessed until a court conducts the final approval hearing, 'a full fairness analysis is unnecessary at this

stage.'" *Id.* (quoting *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted)). "Rather, at the preliminary approval stage, a court need only review the parties' proposed settlement to determine whether it is within the permissible 'range of possible judicial approval' and thus, whether the notice to the class and the scheduling of a fairness hearing is appropriate." *Id.* (quoting *Alberto*, 252 F.R.D. at 666 (citation omitted)). "Preliminary approval of a settlement and notice to the class is appropriate if '(1) the proposed settlement appears to be the product of serious, informed, and noncollusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls within the range of possible approval.'" *Id.* (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007)).

"In determining whether a proposed settlement should be approved, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Id.* (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). "Additionally, the Ninth Circuit favors deference to the 'private consensual decision [settling] parties,' particularly where the parties are represented by experienced counsel and negotiation has been facilitated by a neutral party." *Id.* (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

19

**1.    The Settlement (i) appears to be the result of serious, informed, and non-collusive negotiations and (ii) does not appear to have any obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.**

The proposed settlement was clearly the result of serious, informed, and non-collusive negotiations.  As discussed above, Proposed Class Counsel undertook significant investigation of the surrounding facts before negotiating the proposed settlement, including (i) investigating whether there were any reports that the data at issue was published on the dark web, (ii) investigating whether any of the data at issue was actually published on the dark web, including retaining an expert to search the dark web for impacted data, (iii) investigating whether Plavan published any representations regarding data security, and (iv) requesting and obtaining information from Plavan regarding its knowledge of the manner of the attack, its response thereto, the size of the putative class, and what the ransomware attacker did with the data.  Maxey Decl. ¶ 16.

As for whether the settlement appears to have any obvious deficiencies, improperly grants preferential treatment to class representatives or segments of the class, and falls within the range of possible approval, the result obtained here satisfies these concerns, as evidenced by the dollar amount per class member obtained relative to the amounts obtained in other cyberattack cases in the Ninth Circuit.  As data breach cases go, this case was stronger than average on the merits

given the allegations that Plavan had been the subject of a ransomware attack by the DoNex ransomware group, that 22 gigabytes of data, including customers' data, were exfiltrated during the Data Breach, and that samples of the leaked data were available on the dark web.  Compl. ¶¶ 1, 8. Commensurate with this, the "common fund" settlement obtained for RP and Settlement Class Members is an exemplary result for a data breach settlement, particularly a cyberattack case.   Below are example orders within the Ninth Circuit granting preliminary or final approval of common fund settlements in data breach cases arising from cyberattacks, none of which achieves the **$101.76** per Settlement Class Member obtained here:

- $3.75 per class member: *In Re PostMeds, Inc. Data Breach Litig.*, No. 23-CV-05710-HSG, 2024 WL 4894293 (N.D. Cal. Nov. 26, 2024) (granting preliminary approval) ($7.5 million fund for approximately 2 million class members)

- $10.04 per class member: *Peterson v. Vivendi Ticketing US LLC*, No. CV 23-7498-MWF (DFMX), 2024 WL 3915154 (C.D. Cal. June 20, 2024) (granting preliminary approval ) ($3.25 million fund for approximately 323,498 class members)

- $7.14 per class member: *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024) (granting final approval) ($10 million fund for approximately 1.4 million class members)

- $3.74 per class member: *Guy v. Convergent Outsourcing, Inc.*, No. C22-1558 MJP, 2023 WL 8778166 (W.D. Wash. Dec. 19, 2023) ($2.45 million fund for approximately 640,906 class members)

- $50.60 per class member: *In re Solara*, 2022 WL 1174102 (granting

21

preliminary approval) ($5,060,000 fund for approximately 100,000 individuals)[10]

- $113.09 per class member: *Pfeiffer v. RadNet, Inc.*, No. 220CV09553RGKSKX, 2021 WL 8893644 (C.D. Cal. Aug. 18, 2021) ($2.6 million fund for approximately 22,989 individuals)[11]

In addition, the proposed settlement treats all class members equally.  Each class member can make a claim for (i) reimbursement for Ordinary Out-of-Pocket Losses, (ii) reimbursement for Extraordinary Losses and Attested Time; (ii) Residual Cash Payments of up to $550; and (iv) Credit Monitoring Services.

## C. Approving Class Notice.

"Class notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *In re Solara*, 2022 WL 1174102, at *8 (quoting *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019)).

---

[10] In *In re Solara*, the plaintiffs brought a California statutory claim that allowed for up to $1,000 in damages per class member, and the defendant faced "the risk that [it] may file for bankruptcy in the event of a high statutory damages judgment against it."  *Id.* at *7.  Here, RP does not bring a statutory claim as he is not a California resident and did not have the leverage of these potential damages in negotiating a settlement.  Nonetheless, the proposed settlement is approximately double what was obtained in *In re Solara* on a per class member basis.

[11] As in *In re Solara*, the class in *RadNet* included California residents with a statutory claim, in this instance allowing for up to $750.  *Id.* at *2 (citing Cal. Civ. Code § 1798.150(a)).  Again, RP does not bring a statutory claim as he is not a California resident and did not have the leverage of these potential damages in negotiating a settlement.  Nonetheless, the proposed settlement is approximately the same as what was obtained in *RadNet* on a per class member basis.

22

"In addition, the class notice must satisfy the content requirements of Rule 23(c)(2)(B), which provides the notice must clearly and concisely state in plain, easily understood language:

> [t]he nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* (quoting Fed. R. Civ. P. 23(c)(2)(B)).

### 1.    Content and Method of Notice.

The proposed notice program provides that a Short Form Notice, with an attached "tear off" claim form with prepaid postage for those who wish to make claims that do not require documentation, shall be mailed to all Settlement Class Members. *Id.* ¶ 3.2.1. The Claims Administrator shall mail a copy of the Short Form Notice via United States Postal Services ("USPS") first class mail to all Settlement Class Members for whom Plavan can ascertain a mailing address from its records with reasonable effort. *Id.*   For any Short Form Notices that are returned undeliverable, the Claims Administrator shall use reasonable efforts to identify updated mailing addresses and resend the Short Form Notice to the extent feasible. *Id.* The Claims Administrator shall email a copy of the Short Form Notice to all

Settlement Class Members for whom Plavan can ascertain an email address from its records with reasonable effort. *Id.*

The Short Form Notice (i) states that a proposed settlement has been reached in a class action lawsuit arising from the Ransomware Attack, (ii) defines the class as "all individual U.S. residents to whom Plavan sent written notification of the February 23, 2024, Ransomware Incident," (iii) explains that the claims in the lawsuit relate to the Ransomware Attack and identifies the relief available to Settlement Class Members, (iv) advises that "Other Options" include exclusion from the Settlement or objecting to the it, and (v) advises that Settlement Class Members who do not exclude themselves from the Settlement will give up their right to sue Plavan for the claims that the Settlement resolves. S.A. Ex. B.  The deadlines to make a claim, request exclusion, and object have placeholders for this information to be filled in following preliminary approval. *Id.*

In addition to mailing the Short Form Notice to Settlement Class Members, the Claims Administrator shall also post a Long Form Notice on the Settlement Website. *Id.* ¶ 3.2.2. RP submits that the notice program satisfies the requirements of Rule 23 and due process and should be approved.

**D. Scheduling Fairness Hearing.**

For the Court's convenience, RP proposes the following dates and deadlines, including proposing that the final fairness hearing be scheduled no sooner than 150

24

days from the date the Court enters an order preliminarily approving the proposed settlement:

| ACTION | DATE |
|---|---|
| Defendant Provides Class Member List | Within 14 days of an order directing class notice |
| Class Notice Date | 30 days after entry by the Court of the Preliminary Approval Order |
| Completion of Notice Program | 60 days after entry of the Preliminary Approval Order |
| Motion for Attorneys' Fees, Expenses, and Service Awards to RP | 14 days prior to the Objection Deadline |
| Exclusion / Opt-Out Deadline | 60 days from the Class Notice Date |
| Objection Deadline | 60 days from the Class Notice Date |
| Deadline to Submit Claims | 90 days after the Class Notice Date |
| Final Approval Brief and Response to Objections Due | At least 14 days prior to the Final Approval Hearing |
| Final Approval Hearing | (To be scheduled no earlier than 150 days after entry of Preliminary Approval Order) |

## CONCLUSION

For the reasons set forth set forth above, RP requests the Court enter the order proposed by the Parties directing the Settlement Class be notified of the proposed settlement in the manner set forth in the Notice Plan and schedule a Final Approval Hearing.

Date: December 16, 2024                    Respectfully Submitted,

/s/ *Ryan D. Maxey*

Michael F. Ram, Esq. (SBN 104805)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Email: mram@forthepeople.com

Patrick A. Barthle II*
Florida Bar No. 99286
pbarthle@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

Ryan D. Maxey*
**MAXEY LAW FIRM, P.A.**
107 N. 11th St. #402
Tampa, Florida 33602
(813) 448-1125
ryan@maxeyfirm.com

* *admitted pro hac vice*

*Attorneys for Plaintiffs and the Proposed Class*

1

## **CERTIFICATE OF SERVICE**

2

3          I hereby certify that on December 16, 2024, I electronically filed the foregoing

4    document with the Clerk of the Court using the CM/ECF system, which will send

5    notice of electronic filing to all counsel of record.

6

7                                    /s/     *Ryan D. Maxey*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28