Michael F. Ram, Esq. (SBN 104805)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Email: mram@forthepeople.com

Patrick A. Barthle II*
Florida Bar No. 99286
pbarthle@ForThePeople.com
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 229-4023
Facsimile: (813) 222-4708

Ryan D. Maxey*
**MAXEY LAW FIRM, P.A.**
107 N. 11th St. #402
Tampa, Florida 33602
(813) 448-1125
ryan@maxeyfirm.com

*\* pro hac vice*
*Attorneys for Plaintiff and the Proposed Class*

# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY TANNER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PLAVAN COMMERCIAL FUELING, INC.,<br><br>Defendant. | Case No. 3:24-CV-1341-BTM-JLB<br><br>**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:      Hon. Barry Ted Moskowitz<br>Magistrate:  Hon. Jill L. Burkhardt<br><br>Action Filed:    July 30, 2024<br>Trial Date:      None Set |

i

# MEMORANDUM OF POINTS AND AUTHORITIES

# INTRODUCTION

Following hard-fought settlement negotiations, the Parties[1] reached a settlement to resolve claims arising from a Ransomware Attack Plavan announced in June 2024. The settlement creates a non-reversionary common fund of $300,000.00 for the benefit of approximately 2,948 class members (or **$101.76** per class member),[2] including (i) reimbursement for Ordinary Out-of-Pocket Losses, (ii) reimbursement for Extraordinary Losses and Attested Time; (ii) Residual Cash Payments of up to $550; and (iv) Credit Monitoring Services. Subject to Court approval, the Settlement Fund will also pay for a notice and administration program, a service award to RP, and attorneys' fees and expenses. Plavan commits to pay for, implement, and continue certain data-security enhancements.

The settlement is a favorable result for the Settlement Class, securing valuable benefits tailored to the facts of the case. The settlement is fair, reasonable, and

---

[1] The parties to the settlement are Tracy Tanner, the Representative Plaintiff ("RP"), on behalf of the proposed Settlement Class, and Defendant Plavan Commercial Fueling, Inc. ("Plavan"). Capitalized terms used in this Brief have the same meaning as in the Settlement Agreement ("S.A."), attached to Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and to Direct Notice of Proposed Settlement to the Class as Exhibit 1 (ECF No. 20-1).

[2] As explained further below, this figure far exceeds what is typically obtained in data breach cases.

**1**

adequate and meets the requirements of Rule 23(e). RP thus moves for an order finally approving the settlement.   In support of his motion, RP submits the declaration of proposed co-Class Counsel Ryan D. Maxey ("Maxey Decl.") (ECF No. 20-2); and the declaration of Christopher Leung behalf of the proposed Claims Administrator (Simpluris, Inc. ("Simpluris")), including the Notice Plan ("Leung Decl.") (Ex. 1 hereto).

## FACTUAL BACKGROUND

### A. Overview of the Litigation

On or around February 23, 2024, Plavan experienced a Ransomware Incident, which may have impacted the names and Social Security numbers of Plavan's current and former customers.  On or around June 24, 2024, Plavan announced the Ransomware Attack. On July 30, 2024, RP filed a Class Action Complaint in this Court (ECF No. 1) (the "Complaint").  Plavan denies the allegations and the claims made in the Complaint.

Prior to Plavan responding to the Complaint, the Parties engaged in settlement negotiations.  After a virtual meeting and several written exchanges, the parties reached an agreement in principle on a $300,000.00 Settlement Fund, the terms of which were later finalized in this Settlement Agreement and the attached exhibits.

### B. The Terms of the Proposed Settlement

### The Settlement Class

The proposed Settlement Class is defined as: all individual U.S. residents to whom Plavan sent written notification of the February 23, 2024, Ransomware Incident S.A. ¶ 1.27.[3]  Plavan represents that the Settlement Class contains approximately 2,948 individuals. *Id.*

**The Settlement Fund**

Plavan will pay $300,000.00 into a Settlement Fund for class benefits, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses award by the Court. *Id.* ¶ 2.1. Specifically, Plavan will shortly fund a non-reversionary cash settlement fund in the amount of $300,000.00 for the benefit of Settlement Class Members (the "Settlement Fund"). *Id.* The specific benefits available to Settlement Class Members are detailed in the Settlement Agreement, and include:

- **<u>Ordinary Out-of-Pocket Losses.</u>** All Settlement Class Members may submit a claim for "Ordinary" Out-of-Pocket Losses up to $1,000 per individual. S.A. ¶ 2.3. "Ordinary" Out-of-Pocket Losses are unreimbursed costs or expenditures incurred by a Class member in responding to notice of

---

[3] Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staffs, and immediate members of the Judges' respective families; (2) officers, directors, members and shareholders of Defendant; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Ransomware Incident or who pleads nolo contendere to any such charge. Defendant represents that there are no such individuals known within Settlement Class. *Id.*

the Ransomware Incident that were incurred between February 23, 2024 (or the earliest verifiable date the data breach occurred) and the Claims Deadline, as result of the Ransomware Incident *Id.* ¶ 2.3.1.

- **Extraordinary Losses and Attested Time.** In addition to submitting a claim for Ordinary Out-of-Pocket Losses, Settlement Class Members who believe they have suffered identity theft, fraud, or other extraordinary losses may submit a claim for Extraordinary Out-of-Pocket Losses up to $10,000 per individual. S.A. ¶ 2.4. "Extraordinary Losses" are actual, documented, and unreimbursed costs, expenses, losses or charges incurred a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of the Settlement Class member's personal information. *Id.* ¶ 2.4.1. The loss must have occurred between February 23, 2024 (or the earliest verifiable date the data breach occurred) and the Claims Deadline. *Id.* The Settlement Class Member must have made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. *Id.* In addition, and whether or not they incurred Extraordinary Out-of-Pocket Losses, Settlement Class Members may also submit a claim for up to 5 hours of time spent remedying issues related to the Ransomware Incident at a rate of $30 per hour, but only if at least 1 full hour was spent. ("Attested Time"). *Id.* ¶ 2.4.3.

- **Residual Cash Payment.** If there are funds remaining in the Settlement Fund after payment of Approved Claims for Credit Monitoring Services, Approved Claims for Ordinary Out-of-Pocket Losses, Approved Claims for Extraordinary Out-of-Pocket Losses and Attested Time, costs of notice and administration, a service award approved by the Court, and attorney's fees and expenses approved by the Court ("the Remainder"), the Remainder will be paid pro rata to each Settlement Class Member who timely submitted an approved claim, whether for a Residual Cash Payment or any other benefit available under the Settlement. *Id.* ¶ 2.7. The amount of the Residual Cash Payments will be calculated by dividing the Remainder by the number of Settlement Class Members who timely submitted an approved claim, and thus could be less than $550. *Id.*

- **<u>Credit Monitoring/Identity Theft Protection Services</u>**. The Settlement Fund will be used to provide three years of three bureau credit monitoring ("Credit Monitoring Services"). *Id.* ¶ 2.2. Settlement Class Members must file a claim form that selects credit monitoring in order to obtain Credit Monitoring Services. *Id.*

Settlement Class Members seeking any of these benefits must complete and submit either a written or online Claim Form to the Claims Administrator, postmarked or electronically submitted on or before the Claims Deadline. *Id.* ¶ 2.8.2. For Claims for Ordinary Out-of-Pocket Losses and Claims for Extraordinary Losses and Attested Time, the claimant must provide documentation supporting their claim (*id.* ¶¶ 2.3.2, 2.4.2).

If the aggregate amount of approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Losses and Attested Time exceeds the remaining amount of the Settlement Fund after payment for costs of Credit Monitoring Services and Court-approved notice and administration costs, service award payments, and attorneys' fees and expenses, approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Out-of-Pocket Losses and Attested Time will be decreased *pro rata* to consume the remaining amount of the Settlement Fund. *Id.* ¶ 2.6.

Residual Cash Payments will be increased *pro rata* to a maximum of $550 or decreased *pro rata* to consume the remaining amount of the Settlement Fund after payment for approved Claims for Ordinary Out-of-Pocket Losses and Extraordinary Out-of-Pocket Losses and Attested Time, costs of Credit Monitoring Services, and

Court-approved notice and administration costs, service award payments, and attorneys' fees and expenses. *Id.* ¶ 2.7.

**Proposed Injunctive Relief—Business Practice Commitments**

At least seven (7) days before any deadline for a motion for preliminary approval of this Settlement, Plavan will provide a declaration detailing the subsequent remedial measures it took following the Ransomware Incident. Plavan agrees that the subsequent remedial measures will continue for at least 3 years following the execution of the Settlement Agreement. *Id.* ¶ 2.9.

**Preliminary Approval, Notice, Objections and Exclusions, and Approved Claims**

**a. Preliminary Approval.**

On December 16, 2024, Plaintiff moved the Court to grant preliminary approval of the Settlement, approve the proposed Notice Plan, direct notice be given to the Settlement Class, and Schedule a Final Approval Hearing. (ECF No. 20). On February 18, 2025, the Court granted Plaintiffs' motion. (ECF No. 21).

**b. Notice.**

Pursuant to the Preliminary Approval Order, the Settlement Administrator implemented the Notice Plan, disseminating notices to 2,948 unique Class Members, which had 2,917 valid mailing addresses, via U.S. mail. *See* Leung Decl. ¶¶ 4-5. Notice was also provided via an internet website. *Id.* ¶ 9.

6

The Notice instructed Class Members of their legal rights and options in this Settlement, including: the option to submit a Claim Form to receive monetary payment for losses suffered; the option to ask to be excluded from the Settlement and retain the right to bring an individual action against Plavan; the option to object to the Settlement; the option to attend the Final Approval Hearing; and the option to do nothing and not receive a monetary payment from the Settlement. (ECF No. 20-1).

### c.  Objections and Exclusions.

The deadline for Class Members to exclude themselves or object to the proposed Settlement passed on May 19, 2025, (ECF No. 21, PageID.223), and only one exclusion request and no objections have been received to date.  Leung Decl. ¶¶ 13, 15.

### d.  Approved Claims.

The claim deadline was June 18, 2025, and approximately 251 Claim Form submissions have been received to date. *Id.* ¶ 11.  If the Court (i) grants RP's request to award RP a $5,000.00 service award, $100,000.00 in reasonable attorneys' fees, and $6,603.75 in litigation expenses and (ii) approves approximately $17,969 for the costs of notice and administration and credit monitoring, $170,427.25 of the $300,000.00 Settlement Fund will remain for payments to Class Members. Dividing this amount equally among the 251 claimants to date would result in a

payment of **$678.99** to each claimant after a second round of checks (assuming each claimant cashes the first round of checks), an exceptional result in a data breach case.

The "common fund" settlement obtained for RP and Settlement Class Members is an exemplary result for a data breach settlement. Below are example orders within the Ninth Circuit granting preliminary or final approval of common fund settlements in data breach cases arising from cyberattacks, confirming the achievement in obtaining **$101.76** per Settlement Class Member:

- $3.75 per class member: *In Re PostMeds, Inc. Data Breach Litig.*, No. 23-CV-05710-HSG, 2024 WL 4894293 (N.D. Cal. Nov. 26, 2024) (granting preliminary approval) ($7.5 million fund for approximately 2 million class members)

- $10.04 per class member: *Peterson v. Vivendi Ticketing US LLC*, No. CV 23-7498-MWF (DFMX), 2024 WL 3915154 (C.D. Cal. June 20, 2024) (granting preliminary approval ) ($3.25 million fund for approximately 323,498 class members)

- $7.14 per class member: *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024) (granting final approval) ($10 million fund for approximately 1.4 million class members)

- $3.74 per class member: *Guy v. Convergent Outsourcing, Inc.*, No. C22-1558 MJP, 2023 WL 8778166 (W.D. Wash. Dec. 19, 2023) ($2.45 million fund for approximately 640,906 class members)

- $50.60 per class member: *In re Solara*, 2022 WL 1174102 (granting preliminary approval) ($5,060,000 fund for approximately 100,000

individuals)[4]

- $113.09 per class member: *Pfeiffer v. RadNet, Inc.*, No. 220CV09553RGKSKX, 2021 WL 8893644 (C.D. Cal. Aug. 18, 2021) ($2.6 million fund for approximately 22,989 individuals)[5]

The result here far exceeds any of these comparators.

The claims rate of **8.26%** as of July 7, 2025 further confirms the quality of the result obtained for the class. *See* Leung Decl. ¶ 12. "A claims rate of 1.46% is generally in line with the rate experienced in other data breach class actions." *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *4 (noting the approximately 1% claims rate in *Fox v. Iowa Health Sys.*, No. 18-C-327, 2021 WL 826741, at *2 (W.D. Wis. March 4, 2021)). The claims rate here has already exceeded what has been deemed adequate in other data breach cases and is still rising.

**ARGUMENT**

---

[4] In *In re Solara*, the plaintiffs brought a California statutory claim that allowed for up to $1,000 in damages per class member, and the defendant faced "the risk that [it] may file for bankruptcy in the event of a high statutory damages judgment against it." *Id.* at *7. Here, RP does not bring a statutory claim as he is not a California resident and did not have the leverage of these potential damages in negotiating a settlement. Nonetheless, the proposed settlement is approximately double what was obtained in *In re Solara* on a per class member basis.

[5] As in *In re Solara*, the class in *RadNet* included California residents with a statutory claim, in this instance allowing for up to $750. *Id.* at *2 (citing Cal. Civ. Code § 1798.150(a)). Again, RP does not bring a statutory claim as he is not a California resident and did not have the leverage of these potential damages in negotiating a settlement. Nonetheless, the proposed settlement is approximately the same as what was obtained in *RadNet* on a per class member basis.

9

"In deciding whether to grant the motions for final approval and attorney fees, the Court analyzes (1) whether to certify a class for settlement purposes and (2) the fairness of the Settlement." *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *3 (C.D. Cal. Oct. 30, 2023).

The Court previously concluded that Plaintiff presented sufficient evidence to show that the proposed class satisfies the requirements of Rule 23(a). *See* (ECF No. 21). Plaintiff requests that the Court adopt its prior analysis regarding class certification and grant certification of the proposed class for settlement purposes only. *See id.* ("The Court previously concluded that Plaintiffs presented sufficient evidence to show that the proposed class satisfies these requirements. Having reviewed those requirements again, the Court adopts its prior analysis regarding class certification and grants certification of the proposed class for settlement purposes only.") (citation to record omitted).

"To determine whether a settlement is 'fair, reasonable, and adequate,' courts should consider whether:

    (A)    the class representatives and class counsel have adequately represented the class;

    (B)    the proposal was negotiated at arm's length;

    (C)    the relief provided for the class is adequate, taking into account:

        (i)    the costs, risks, and delay of trial and appeal;

> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)   any agreement required to be identified under Rule 23(e)(3); and
>
> (D)   the proposal treats class members equitably relative to each other."

*In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025)

(citing Fed. R. Civ. P. 23(e)(2)(A)-(D)).

Other factors "can still be considered for Rule 23(e)(2) analysis." *Id.* (citing

*McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 n.4 (9th Cir. 2021)).

"Another concern lurks in the background of every class action settlement: 'class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee.'" *Id.* (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).

> In *Bluetooth*, [the Ninth Circuit] identified three subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations. Those are: (1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class.

*Id.* at 674-75 (citations and internal quotation marks omitted).

### *Rule 23(e)(2) factors*

**A.    The class representatives and class counsel have adequately represented the class.**

"There is no evidence of a conflict of interest between Plaintiffs and the class. Their claims regarding this data breach are identical to those of other class members, and they have every incentive to vigorously pursue those claims." *Carter*, 2023 WL 8153712, at *4 (deeming this factor satisfied).

Proposed Class Counsel undertook significant investigation of the surrounding facts before negotiating the proposed settlement. First, prior to filing the complaint, Proposed Class Counsel investigated whether there were any reports that the data at issue was published on the dark web. Maxey Decl. ¶ 16. As a result of this investigation, the complaint alleges that "[o]n or around March 7, 2024, reports began surfacing on the Internet that Plavan had been the subject of a ransomware attack by the DoNex ransomware group, that 22 gigabytes of data, including customers' data, were exfiltrated during the Data Breach, and that samples of the leaked data were available on the dark web." Compl. ¶ 8.

Second, Proposed Class Counsel investigated whether any of the data at issue was actually published on the dark web, including retaining an expert to search the dark web for impacted data. Maxey Decl. ¶ 16. In negotiating the proposed

settlement, Proposed Class Counsel leveraged reports that samples of the data had been published and other evidence that the information had been released. *Id.*

Third, Proposed Class Counsel investigated whether Defendant published any representations regarding data security. *Id.* As a result of this investigation, the complaint alleges that "Defendant's Privacy Policy, posted on its website," makes certain representations regarding the protection of personal information. Compl. ¶ 9.

Fourth, Proposed Class Counsel requested and obtained information from Plavan regarding its knowledge of the manner of the attack, its response thereto, the size of the putative class, and what the ransomware attacker did with the data. Maxey Decl. ¶ 16.[6]

"Formal discovery is not necessary where the parties have 'sufficient information to make an informed decision about the settlement.'" *Peterson*, 2024 WL 3915154, at *4 (quoting *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998)). Proposed Class Counsel gathered information reasonably available before negotiating the proposed settlement, and the information was sufficient to make an informed decision about the settlement.

**B.    The proposal was negotiated at arm's length.**

---

[6] As this information was produced subject to Fed. R. Civ. P. 408 in the interests of negotiation a settlement, Plaintiff cannot provide further detail in this motion.

13

Counsel for the parties negotiated the Settlement Agreement at arm's length, after a virtual meeting and several written exchanged, Maxey Decl. ¶ 15, as confirmed by the superb result obtained for the class. And, as explained further below, "the Settlement does not have any 'subtle signs' of collusion." *Carter*, 2023 WL 8153712, at *4 (deeming this factor satisfied) (citations omitted).

**C.    The relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).**

     **a.    The costs, risks, and delay of trial and appeal.**

"The Settlement reflects a substantial outcome for the individuals Defendant's data breach affected." *Carter*, 2023 WL 8153712, at *5. Below are example orders within the Ninth Circuit granting preliminary or final approval of common fund settlements in data breach cases arising from cyberattacks, confirming the achievement in obtaining **$101.76** per Settlement Class Member:

- <u>$3.75 per class member</u>: *In Re PostMeds, Inc. Data Breach Litig.*, No. 23-CV-05710-HSG, 2024 WL 4894293 (N.D. Cal. Nov. 26, 2024) (granting preliminary approval) ($7.5 million fund for approximately 2 million class members)

- <u>$10.04 per class member</u>: *Peterson v. Vivendi Ticketing US LLC*, No. CV 23-7498-MWF (DFMX), 2024 WL 3915154 (C.D. Cal. June 20, 2024) (granting preliminary approval ) ($3.25 million fund for approximately 323,498 class members)

- $7.14 per class member: *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024) (granting final approval) ($10 million fund for approximately 1.4 million class members)

- $3.74 per class member: *Guy v. Convergent Outsourcing, Inc.*, No. C22-1558 MJP, 2023 WL 8778166 (W.D. Wash. Dec. 19, 2023) ($2.45 million fund for approximately 640,906 class members)

- $50.60 per class member: *In re Solara*, 2022 WL 1174102 (granting preliminary approval) ($5,060,000 fund for approximately 100,000 individuals)[7]

- $113.09 per class member: *Pfeiffer v. RadNet, Inc.*, No. 220CV09553RGKSKX, 2021 WL 8893644 (C.D. Cal. Aug. 18, 2021) ($2.6 million fund for approximately 22,989 individuals)[8]

Balanced against this superb result are the "[e]xtensive and expensive expert analysis [that] would be needed" and, "significant risks associated with class certification, summary judgment, and trial." *Carter*, 2023 WL 8153712, at *5.

---

[7] In *In re Solara*, the plaintiffs brought a California statutory claim that allowed for up to $1,000 in damages per class member, and the defendant faced "the risk that [it] may file for bankruptcy in the event of a high statutory damages judgment against it." *Id.* at *7. Here, RP does not bring a statutory claim as he is not a California resident and did not have the leverage of these potential damages in negotiating a settlement. Nonetheless, the proposed settlement is approximately double what was obtained in *In re Solara* on a per class member basis.

[8] As in *In re Solara*, the class in *RadNet* included California residents with a statutory claim, in this instance allowing for up to $750. *Id.* at *2 (citing Cal. Civ. Code § 1798.150(a)). Again, RP does not bring a statutory claim as he is not a California resident and did not have the leverage of these potential damages in negotiating a settlement. Nonetheless, the proposed settlement is approximately the same as what was obtained in *RadNet* on a per class member basis.

"Even if Plaintiff[] could secure a better result than the Settlement represents at trial, any result obtained then would take significantly longer and there is a risk that Plaintiff[] could have received much less, or nothing at all." *Id.*

"These general risks are heightened in data breach cases like this one." *Id.* "For example, tying Plaintiffs' alleged injuries to this particular data breach may be difficult." *Id.*

"The Settlement removes these costs and risks 'by ensuring class members a recovery that is certain and immediate, eliminating the risk that class members would be left without any recovery at all.'" *Id.* (quoting *Graves v. United Indus. Corp.*, 2020 WL 953210, at *7 (C.D. Cal. Feb. 24, 2020) (cleaned up)).

### b. The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.

In evaluating this factor, "[o]ften it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." *Carter*, 2023 WL 8153712, at *6 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

This factor is satisfied because "the relief distribution is straightforward." Id. "Class members were able to easily complete and submit either by mail or online a simple claim form for ordinary and extraordinary cost reimbursement, credit

**16**

monitoring services, and/or a [residual cash] payment."  *Id.; see* S.A. ¶¶ 2.2-2.7.

"And they were able to select payment by PayPal, Venmo, Zelle, [other electronic platform deemed efficient and appropriate], or physical check."  *Carter*, 2023 WL 8153712, at *6; *see* S.A. ¶ 2.8.4.  "The procedure for filing claims was not unduly demanding and the proposed method of relief distribution also appears adequate."  *Carter*, 2023 WL 8153712, at *6.

### c. The terms of any proposed award of attorney's fees, including timing of payment.

Regarding the proposed attorney's fee award, there are no signs of collusion.  Counsel has not requested a disproportionate distribution of the settlement; counsel seeks one third of the settlement fund in attorney's fees.  Moreover, there is no "clear sailing arrangement" as Plavan has not agreed to not challenge a request for an agreed-upon attorney's fees.  Finally, the Settlement Agreement does not contain a "kicker" or "reverter" clause that returns unawarded fees to Plavan, rather than the class.

Plaintiff's Motion for Service Award, Attorney's Fees, and Litigation Costs (ECF No. 22) explains in detail why an award of one third of the Settlement Fund in attorney's fees and an award of $6,603.75 in litigation costs is appropriate given the result obtained in this case.

Regarding the timing of the payment, the Settlement Agreement provides that attorney's fees and expenses are to be paid within ten (10) days after the Effective

Date (the date when the time to appeal or seek to appeal from the Judgement has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review). S.A. ¶¶ 1.12, 7.4. "Payments for approved claims shall be sent to the claimants within sixty (60) days of the Effective Date." *Id.* ¶ 8.2. This "relatively small gap [of 50 days] between payments standing alone is not so significant as to weigh against granting final approval of the Settlement." *Carter*, 2023 WL 8153712, at *8 (approving 60 day gap).

### d.  Any agreement required to be identified under Rule 23(e)(3).

There is no agreement required to be identified under Rule 23(e)(3).

### e.  Class members' reaction to the settlement.

Only one class member requested exclusion and no class member filed an objection. "These numbers indicate strong overall support for the Settlement and weigh in favor of granting final approval." *Carter*, 2023 WL 8153712, at *9 (finding same where one exclusion and one objection were filed).

Moreover, the claims rate of **8.26%** as of July 7, 2025 further weighs in favor or granting final approval. *See id.* ("To begin, the 1.6% claims rate is in line with claims rates in other data breach class action settlements that courts have approved.").

### D.    The proposal treats class members equitably relative to each other.

18

In evaluating this factor, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Carter*, 2023 WL 8153712, at *11 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).

This factor is satisfied because (i) "[c]lass members may receive differing payouts under the Settlement depending on what documentation they have of their ordinary and extraordinary costs resulting from the data breach," a "difference in treatment [that] is appropriate and reasonable" and (ii) the "release is also the same for all class members." *Id.*

**E.     Incentive awards.**

Plaintiff's Motion for Service Award, Attorney's Fees, and Litigation Costs (ECF No. 22) explains in detail why a service award of $5,000 is presumptively reasonable.

**CONCLUSION**

19

For the reasons set forth set forth above, final approval of the settlement and certification of the settlement class are warranted. Accordingly, RP requests the Court (i) enter an order granting this motion and Plaintiff's Motion for Service Award, Attorney's Fees, and Litigation Costs and (ii) enter a final judgment dismissing this case.


Date: July 7, 2025                          Respectfully Submitted,


                                            /s/ Ryan D. Maxey

                                            Michael F. Ram, Esq. (SBN 104805)
                                            **MORGAN & MORGAN**
                                            **COMPLEX LITIGATION GROUP**
                                            711 Van Ness Avenue, Suite 500
                                            San Francisco, CA 94102
                                            Telephone: (415) 358-6913
                                            Email: mram@forthepeople.com

                                            Patrick A. Barthle II*
                                            Florida Bar No. 99286
                                            pbarthle@ForThePeople.com
                                            **MORGAN & MORGAN**
                                            **COMPLEX LITIGATION GROUP**
                                            201 N. Franklin Street, 7th Floor
                                            Tampa, Florida 33602
                                            Telephone: (813) 229-4023
                                            Facsimile: (813) 222-4708

                                            Ryan D. Maxey*
                                            **MAXEY LAW FIRM, P.A.**
                                            107 N. 11th St. #402
                                            Tampa, Florida 33602
                                            (813) 448-1125

**20**

ryan@maxeyfirm.com

*\* admitted pro hac vice*

*Attorneys for Plaintiffs and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 7, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

/s/    *Ryan D. Maxey*