# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRACY TANNER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PLAVAN COMMERCIAL FUELING, INC,<br><br>Defendant. | Case No.: 3:24-cv-1341-BTM-JLB<br><br>**ORDER GRANTING MOTIONS FOR 1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND 2) SERVICE AWARD, ATTORNEY'S FEES, AND LITIGATION COSTS**<br><br>**[ECF NOS. 22, 23]** |

The Court previously granted a motion for preliminary approval of the parties' Class Action Settlement in this matter on February 21, 2025. (ECF No. 21). Plaintiff has now filed an unopposed Motion for Final Approval of Class Action Settlement and a Motion for Service Award, Attorney's Fees, and Litigation Costs. (ECF Nos. 22 & 23). The Court held a final approval hearing on July 21, 2025.  (ECF No. 26.)

Having considered the motion briefing, the terms of the Settlement Agreement,[1] the lack of any objections, the arguments of counsel, and the other materials on file in this action, the Court **GRANTS** both motions.  (ECF Nos. 22 & 23).

## I.   BACKGROUND

### A. Procedural History

In February 2024, Defendant Plavan Commercial Fueling, Inc. ("Plavan" or "Defendant") experienced a Ransomware Incident, which may have impacted the names and Social Security numbers of Plavan's current and former customers.  (*See generally* ECF No. 1.)  Plavan announced the Ransomware Incident in June 2024, and Plaintiff filed a Class Action Complaint in this Court on July 30, 2024.  (*Id.*)

Plaintiff filed a Notice of Settlement on October 14, 2024, which stated that Plaintiff and Defendant had reached an agreement to resolve all pending claims against Defendant on a class-wide basis. (ECF No. 14.)  Plaintiff filed a motion for preliminary approval of the class settlement on December 16, 2024, which the Court granted on February 18, 2025. (ECF Nos. 20, 21).

In its Preliminary Approval Order, the Court conditionally certified the Settlement Class as "[a]ll individual U.S. residents to whom Plavan sent written notification of the February 23, 2024, Ransomware Incident." (ECF No. 21 at 1–2.)  The Court provisionally appointed Patrick A. Barthle II of Morgan & Morgan and Ryan D. Maxey of Maxey Law Firm, P.A. as Class Counsel, Tracy Tanner as Class Representative, and Simpluris, Inc. as Class Administrator.  (*Id.* at 2, 3.)

### B. Terms of the Settlement Agreement

Under the Settlement Agreement, Plavan agreed to establish a non-reversionary common fund of $300,000 for "class benefits, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses award by the

---

[1] All capitalized terms herein have the same definitions as set forth in the Settlement Agreement.

Court." (ECF No. 23, at 3; ECF No. 20-1, ¶¶ 2.1–2.7.)  In exchange, the class members will release Plavan from all claims related to the Ransomware Incident. (ECF No. 20-1, ¶¶ 1.22, 1.23, 6.)

## II.   FINAL APPROVAL OF SETTLEMENT

### A. Legal Standard

A court may approve a proposed class action settlement only "after a hearing and only on finding that it is fair, reasonable, and adequate" and that it meets the requirements for class certification.  Fed. R. Civ. P. 23(e)(2).  In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  The Ninth Circuit has identified the following factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011).

### B. Analysis

#### 1. The Settlement Class Meets the Prerequisites for Certification

The Court concluded that the class certification requirements were satisfied when it granted preliminary approval of the class action settlement. (ECF No. 21, at 1–2.) The

Court is not aware of any new facts which would alter that conclusion. However, the Court briefly reviews the Rule 23 requirements again.

The class size—which includes "all individual U.S. residents to whom Plavan sent written notification of the February 23, 2024, Ransomware Incident," and which Plavan represents comprises approximately 2,948 individuals (ECF No. 23, at 3)—satisfies Rule 23(a)(1).

Rule 23(a)(2) requires that "there are questions of fact or law common to the class," although all questions of fact and law need not be in common. *Hanlon*, 150 F.3d at 1019. The main legal questions in this action are common to all class members, and thus Rule 23(a)(2) is satisfied.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The Class Representative's claims are typical of those of the class, as they advance the same claims and legal theories as those of the rest of the class. Rule 23(a)(3) is thus satisfied.

With respect to Rule 23(a)(4), the Court finds that the Class Representative and Class Counsel have fairly and adequately represented the interests of the Class. No conflicts of interest appear between Class Representative and the members of the Settlement Class. Class Counsel have demonstrated that they are skilled in this area of the law and are therefore adequate to represent the Settlement Class as well. Rule 23(a)(4) is therefore satisfied.

The Settlement Class further satisfies Rule 23(b)(3) in that common issues predominate and "a class action is superior to other available methods for fairly and efficiently adjudicating" the claims here.

With respect to Rule 23(b)(3), the "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997). The main common question in this case which would be subject to common proof is whether Plavan failed to properly secure and safeguard the Settlement Class's personal identifiable information. That question

predominates in the case. Moreover, given this commonality, and the number of potential class members, the Court concludes that a class action is a superior mechanism for adjudicating the claims at issue.

Accordingly, the Court concludes that the requirements of Rule 23 are met and that certification of the class for settlement purposes is appropriate.[2] The Court appoints Patrick A. Barthle II of Morgan & Morgan and Ryan D. Maxey of Maxey Law Firm, P.A. as Class Counsel and Tracy Tanner as Class Representative.

**2. The Settlement is Fundamentally Fair, Adequate, and Reasonable**

*a. Adequacy of Notice*

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. For the Court to approve a settlement, "[t]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982).

The Court previously approved the parties' proposed notice procedures. (ECF No. 21, at 3–4.) In the Motion for Final Approval, Plaintiff represents that the approved notice plan was executed. (ECF No. 23, at 6–7). Notice was distributed via U.S. mail and via an internet website. (ECF No. 23-1. Decl. of Christoper Leung, ¶¶ 5, 9.) There has been one request for exclusion and no objections. (*Id.*, ¶¶ 12–15.) The notice informed the class members of all key aspects of the Settlement, hearings, and the process for

---

[2] Excluded from the Settlement Class are: (1) the Judge and Magistrate Judge presiding over the Lawsuits, any members of the Judges' respective staffs, and any person within the third degree of relationship to either of the Judges or the Judges' spouses, or the spouse of such a person; (2) officers, directors, members and shareholders of Defendant; (3) persons who timely and validly request exclusion from and/or opt-out of the Settlement Class and the successors and assigns of any such excluded persons; and (4) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity or occurrence of the Ransomware Incident or who pleads nolo contendere to any such charge.

objections. (*Id.*, ¶¶ 5, 9, Exhibit A.)

Considering these actions and the Court's prior order granting preliminary approval, the Court finds that the parties have provided sufficient notice to the class members.

### b. Adequate Representation and Whether the Proposal was Negotiated at Arm's Length

Turning to the Rule 23(e) factors, the Court first considers whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)–(B). These considerations overlap with certain *Hanlon* factors, such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings. *See Hanlon*, 150 F.3d at 1026.

The Court finds that the Class Representatives and Class Counsel have adequately represented the class. There is no evidence of a conflict between the Class Representative or Class Counsel and the rest of the class. Similarly, the Court finds that counsel has vigorously prosecuted this action through its detailed complaint, motion practice, and settlement negotiations. Counsel possessed sufficient information to make an informed decision about the settlement, and it is aware of settlement outcomes in similar cases, further indicating that counsel had adequate information from which to negotiate the settlement. *See* Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment.

The settlement was also the product of arm's length negotiations through back-and-forth communications and bargaining of terms. (*See* ECF No. 20-2, Maxey Decl., ¶¶ 15–17.) There is no evidence that the parties colluded. Counsel's fee request is proportionate to the settlement fund, and no funds revert to Plavan. The Court also finds that the requested fees are in fact reasonable, as will be discussed further below. This factor weighs in favor of approval.

### c. Strength of Plaintiff's Case and Risk of Continuing Litigation

In assessing "the costs, risks, and delay of trial and appeal," Fed R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the

risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026. Proceeding with this case would be costly and risk an unfavorable decision on the merits. While Plaintiff believes in the merits of the case, "Plavan denies the allegations and the claims made in the Complaint" (ECF No. 23, at 2), and there is no guarantee that Plaintiff would prevail. The Court finds these risks weigh in favor of approval.

### d. Effectiveness of Distribution Method

In evaluating the effectiveness of the proposed method of distributing relief to the class, "[o]ften it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." *Carter v. Vivendi Ticketing US LLC*, No. 22-cv-1981-CFC-DF, 2023 WL 8153712, at *6 (C.D. Cal. Oct. 30, 2023) (quoting Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.*

Here, the relief distribution is straightforward. Class members were able to easily complete and submit either by mail or online a claim form for ordinary and extraordinary cost reimbursement, credit monitoring services, and/or a residual cash payment. (*See* ECF No. 20-1, Exhibits A–C.) They were able to select payment via PayPal, Zelle, Venmo, check by mail. (*See* ECF No. 20-1, ¶ 2.8.4 and Exhibit B.) This factor therefore weighs in favor of approval.

### e. Equitable Treatment of Class Members

Rule 23 also requires consideration of whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In evaluating this factor, "[m]atters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment. The Court finds this factor is satisfied because although class members may

receive differing payouts under the Settlement, those differing amounts are based on class members' differing costs resulting from the data breach.

### *f. Settlement Amount*

"The relief that the settlement is expected to provide to class members is a central concern," though it is not enumerated among the Rule 23(e) factors. *See* Fed. R. Civ. P. 23 Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment. Here, the $300,000 fund (around $100 per class member) is an excellent recovery for the class. Counsel stated at the final approval hearing that they estimate that the class members who submitted claims will each receive around $600. Accordingly, the settlement amount also weighs in favor of approval.

### *g. Counsel's Experience*

The Court also considers "the experience and views of counsel." *Hanlon*, 150 F. 3d at 1026. Class Counsel has extensive experience prosecuting similar claims. (*See* ECF No. 20-2, Maxey Decl., ¶¶ 3–13.) That such experienced counsel advocate in favor of the settlement weighs in favor of approval.

### *j. Absence of* **Bluetooth** *Signs of Collusion*

"Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth*, 654 F.3d at 946. In *In re Bluetooth*, the Ninth Circuit identified three "red flags of potential collusion": 1) "class counsel receiving a disproportionately large fee award compared to what the class members received," 2) "a so-called 'clear sailing' provision in which [the defendant] agrees[] that it [will] not challenge the agreed-upon attorneys' fees," and 3) a "reverter" or "kicker" provision, which "means that any fees not awarded to class counsel would revert to the defendant's coffers, and not to the class members." *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 675–76 (9th Cir. 2025) (citing *In re Bluetooth*, 654 F.3d at 947–49). The settlement does not

contain any of these "red flags," which further demonstrates that the settlement is fair, reasonable, and free of collusion.

### h. Objections

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). No objections were received here, and only one request for exclusion was filed. (ECF No. 23-1. Decl. of Christoper Leung, ¶¶ 13–15.) The positive response from the class further confirms that the settlement is fair and reasonable.

### i. Notice to Government Agencies

The parties provided the required notice to federal and state attorneys general under the Class Action Fairness Act, 28 U.S.C. § 1715(b). (Decl. of Christopher Leung Regarding CAFA Notice, ¶ 3.) Notice occurred more than 90 days before the date of this order, as required by 28 U.S.C. § 1715(d). (*Id.*)

### k. Cy Pres

As discussed at the final approval hearing, the Court makes one modification to the Settlement Agreement. The final sentence of paragraph 2.7 of the Settlement Agreement is modified to read as follows: "If, after a second round of Residual Cash Payments, there are any funds remaining in the Settlement Fund, the parties will seek the Court's approval of one or more proposed *cy pres* recipients. No funds shall be distributed to a *cy pres* recipient without the Court's prior approval."

### l. Conclusion

For the foregoing reasons, and after considering the record as a whole, the Court finds that notice of the proposed settlement was adequate, the settlement was not the result of collusion, and the settlement is fair, adequate, and reasonable. The Motion for Final Approval of Class Action Settlement is **GRANTED**, and the Court approves and directs consummation of the Settlement Agreement with the *cy pres* modification described above. The Court also approves the Release provided in the Settlement Agreement and orders that,

as of the Effective Date, the Released Claims will be released as to Released Parties.

## III. MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARD

### A. Legal Standard

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed. R. Civ. P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. "Courts may only award 'reasonable' attorneys' fees." *In re California Pizza Kitchen*, 129 F.4th at 679. "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees. *In re Bluetooth*, 654 F.3d at 942.

"Under the percentage-of-recovery method, the court simply awards counsel with a percentage of the recovery claimed by the class—the typical benchmark is 25%." *In re California Pizza Kitchen*, 129 F.4th at 679. Under the lodestar method, attorneys' fees are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. "Under both methods, certain factors, like 'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment,' may favor upward or downward adjustment." *In re California Pizza Kitchen*, 129 F.4th at 679 (quoting *In re Bluetooth*, 654 F.3d at 942.)

In common fund cases, a lodestar calculation may provide a cross-check on the reasonableness of a percentage award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Thus, even when the primary basis of the fee award is the percentage method, "the lodestar may provide a useful perspective on the reasonableness of a given percentage award." *Id.* "The lodestar cross-check calculation need entail neither

mathematical precision nor bean counting . . . [courts] may rely on summaries submitted by the attorneys and need not review actual billing records." *Covillo v. Specialtys Cafe*, No. C-11-00594-DMR, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014).

**B. Discussion**

Class Counsel seeks $100,000 in fees; $6,603.75 in costs; and $5,000 for the Class Representative. (ECF No. 22).

Addressing costs first, the Court does not hesitate to approve an award in the requested amount of $6,603.75. Class Counsel has submitted an itemized list of expenses. (*See* ECF No. 22-1, Maxey Decl., ¶¶ 18–20.) The Court has reviewed the list and finds the expenses to be reasonable.

The Court likewise is satisfied that the request for attorneys' fees is reasonable. Counsel requests $100,000, or 33.3% of the total recovery. Using the typical 25% benchmark of the percentage-of-recovery method would award counsel $75,000. *See In re Bluetooth*, 654 F.3d at 942. Given the risks involved, the results obtained, and counsel's hours and successful recovery, the Court finds that amount insufficient. If the case proceeded to trial, the risk would be a verdict for Plavan and no recovery for the class. Counsel's work obtained an excellent result for the class. Counsel's contingent fee also supports an increase above the 25% percentage of recovery. As in similar cases where courts awarded attorneys' fees above the percentage-of-recovery amount, the Court will do so here. *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, No. 15-CV-00540-JLS-AGS, 2021 WL 5632673, at *9 (S.D. Cal. Nov. 30, 2021) (granting a 33.3% fee award); *Medoff v. Minka Lighting, LLC*, No. 22-cv-8885-HDV, 2024 WL 5275593, at *1 (C.D. Cal. July 10, 2024) (same).

Counsel has requested an hourly rate of $800 for both attorneys, and a requested hourly rate of $225 for a paralegal, and has submitted evidence detailing the reasonableness of their requested hourly rates. (*See* ECF No. 22, at 10–13; ECF No. 22-1, ¶¶ 12–17.) Other courts have also approved similar rates. *See, e.g.*, *Harbour v. California Health & Wellness Plan*, No. 21-cv-03322-EJD, 2024 WL 171192, at *8 (N.D. Cal. Jan. 16, 2024)

(deeming, in data breach class action case, hourly rates for attorneys ranging from $425 to $1,200 "within the range of those approved in other similar cases"). Indeed, "courts in this District have awarded hourly rates for work performed in civil cases by attorneys with significant experience anywhere in range of $550 per hour to more than $1000 per hour." *Scott v. Blackstone Consulting, Inc.*, No. 21-cv-1470-MMA-KSC, 2024 2024 WL 271439, *10 (S.D. Cal. Jan 24, 2024). Considering the evidence submitted and the cases cited above, the Court finds the requested rates reasonable.

The Court has also reviewed the billing records submitted by counsel and finds the hours billed reasonable. *See In re Bluetooth*, 654 F.3d at 941. The "multiplier" requested here is 2.29; however, this multiplier was calculated using the hours Counsel had billed prior to preparing the Motion for Final Approval of Class Action Settlement and traveling from Florida to California for the final approval hearing. (*See* ECF No. 22, at 14.) Counsel represents that the actual multiplier will be lower than 2.0. (*Id.*) Based on counsel's excellent work and recovery, that is an appropriate and reasonable multiplier and confirms the reasonableness of the fee request. *See Kelly v. Wengler*, 822 F.3d 1085, 1093, 1105 (9th Cir. 2016) (affirming lodestar multipliers of 2.0 and 1.3); *Harbour*, 2024 WL 171192, at *8 (finding that "the lodestar multiple of 1.77 is comparable to that previously permitted by other courts in similar data breach cases"); *Ludlow v. Flowers Foods, Inc.*, Nos. 18-cv-01190-JO-JLB & 20-cv-02059-JO-JLB, 2024 WL 1162049, at *8 (S.D. Cal. Mar. 18, 2024) ("The Ninth Circuit has recognized that multipliers typically can range up to 4.").

The Court has cross-checked the reasonable lodestar figure against the percentage-of-recovery method. *Dexter's LLC v. Gruma Corp.*, No. 23-cv-212-MMA-AHG, 2023 WL 8790268, at *9 (S.D. Cal. Dec. 19, 2023) ("[T]he Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method."). In doing so, the Court finds the request for attorneys' fees reasonable.

For the reasons stated, the motion for attorneys' fees and expenses is **GRANTED**. Class Counsel is awarded $100,000 in fees and $6,603.75 in costs.

### C. Service Award

Class Representative Tracy Tanner seeks $5,000 as a service award. Service awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (internal citation omitted). "In the Ninth Circuit, $5,000 is a presumptively reasonable Service Award." *Mobile Emergency Hous. Corp. v. HP Inc.*, No. 20-cv-09157-SVK, 2025 WL 844412, at *2 (N.D. Cal. Mar. 18, 2025). Given the amount of time and assistance Class Representative put into the case and the success of the recovery (*see* ECF No. 22-1, Maxey Decl. ¶ 21), a service award of $5,000 is appropriate and reasonable.

### IV. CONCLUSION

For the reasons stated, the motion for Settlement Final Approval is **GRANTED**. The motion for attorneys' fees, costs, and service awards is **GRANTED** as follows: Class Counsel is awarded $100,000 in fees and $6,603.75 in costs. Class Representative Tracy Tanner is awarded $5,000 as a service award.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement.

The parties shall file a post-distribution accounting no later than January 5, 2026. The Court sets a compliance hearing on January 12, 2026, at 2:00 p.m. Counsel may appear telephonically at the compliance hearing.

**IT IS SO ORDERED.**

Dated: August 4, 2025

_____
Honorable Barry Ted Moskowitz
United States District Judge